[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 259 
This appeal follows from the second conviction of Eddie Barnard Neal, under Section 13-11-2 (a)(2), Code of Alabama 1975, for the capital offense of robbery during which the victim was intentionally killed.
With appellant's first conviction for the robbery and murder of Quenette Shehane the jury recommended a sentence of death, which was commuted by the trial judge to a sentence of life imprisonment without parole. This judgment was affirmed in Nealv. State, 372 So.2d 1331 (Ala.Crim.App.), cert. denied,372 So.2d 1348 (Ala. 1979); however, the case was later reversed and remanded for new trial in accordance with the decisions inBeck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392
(1980), and Beck v. State, 396 So.2d 645 (Ala. 1980), construing Alabama's Death Penalty Act.
On August 13, 1982, appellant was again found guilty of the robbery and murder of Miss Shehane. The jury recommended that he be imprisoned for life without the possibility of parole and the trial court concurred in the jury's finding, sentencing appellant to life imprisonment without provision for parole.
The facts and circumstances surrounding the robbery and murder of Miss Shehane are set out in detail in Neal, supra, and will not be repeated here.
Appellant raises seven issues for consideration on this appeal. First appellant contends that the trial court erred in denying his motions for judgment of acquittal based on insufficiency of the evidence. He asserts that none of the elements of robbery were sufficiently proven and that, in any case, the evidence in the case pointed to a rape of the victim, then a killing and then a taking of the property. According to appellant, the offense of which he was convicted must begin with a robbery, or attempt to rob, and end with an intentional killing of the victim.
In Thomas v. State, 460 So.2d 207 (Ala.Crim.App. 1983), this court held that, when a robbery and murder form a continuous chain of events, the fact the victim was dead when the property was taken would not negate the crime of robbery. Clements v.State, 370 So.2d 708, (Ala.Crim.App. 1978), rev'd on other grounds, 370 So.2d 723 (Ala. 1979); Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962). In addition, this court held inThomas, supra, that the killing and robbery of Quenette Shehane on December 20, 1976, between the hours of 6:30 p.m. and 9:30 p.m. were part of a continuous chain of events.
In respect to appellant's contention concerning sufficiency of the evidence, it is clear that this court, on review, is required to consider the evidence in the light most favorable to the prosecution. Bozeman v. State, 401 So.2d 167
(Ala.Crim.App.), cert. denied, 401 So.2d 171 (Ala. 1981);McCord v. State, 373 So.2d 1242 (Ala.Crim.App. 1979). Moreover, evidence favorable to the prosecution must be taken as true and the State must be accorded all legitimate inferences therefrom.Jolly v. State, 395 So.2d 1135 (Ala.Crim.App. 1981); Johnson v.State, 378 So.2d 1164 (Ala.Crim.App.), cert. denied,378 So.2d 1173 (Ala. 1979).
Miss Shehane's fiance testified that her television was packed in her car on the evening of December 20, 1978, when she drove to the store to buy a bottle of salad *Page 260 
dressing for dinner. The television was not in the car when it was found by the police the following morning.
On the evening of Miss Shehane's disappearance, John Mays overheard appellant, Thomas (appellant's fraternity brother) and Jones (a pledge in the fraternity) say they were going out to pick up some young ladies, after which they left. Mays later saw Jones's car parked beside the U-Tote-M store, one of two stores within one-half mile of Birmingham-Southern College, where Miss Shehane's fiance awaited her return. Mays heard a young lady yell and saw a man push her into a car which pulled out and which was followed by Jones's car. On the following day Mays found a note from appellant stating that he had taken Mays's tennis shoes and left his [appellant's] boots in their stead. The boots were covered in mud and what appeared to Mays to be blood.
Edward Lynn received a call from Thomas on the night in question asking him to come to a convenience store to pick up the three men. He picked them up and took them to Jones's apartment. He testified that both appellant and Jones had noticeable amounts of blood on their clothing, which they explained by saying they had been in a fight. Two or three days later Thomas was observed to be in possession of Miss Shehane's television, and when he was arrested he called his roommate and asked that he get rid of it. Thomas's palm-print was found on the windshield of Miss Shehane's car, and he was arrested with the murder weapon in his possession.
When appellant was arrested in California, he was using the alias Eddie Ivory. He said that he knew he had been indicted for the rape and murder of a Birmingham girl, but did not surrender because he was afraid the police had a strong case against him. He testified that he left school in January, after Miss Shehane's death in December, and that he stayed with his mother in Memphis until he saw the police entering his mother's house, and then he went to live in California.
From an examination of the record, we find that the State presented sufficient evidence for the jury to conclude, by fair inference, that appellant was guilty, beyond a reasonable doubt, of the crime charged. It is settled law that whether circumstantial evidence tending to implicate a defendant in a crime excludes every other reasonable hypothesis, to a moral certainty, is a question for the jury and not the court. We will not substitute our judgment for that of the jury. Cumbo v.State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979); Cannon v. State, 17 Ala. App. 82,81 So. 860 (1919).
The next issue appellant raises is whether the trial court erred in admitting the testimony given by Officer Robbins in appellant's first trial.
In Williams v. State, 375 So.2d 1257, 1269, (Ala.Crim.App.), cert. denied, 375 So.2d 1271 (Ala. 1979), this court held that "[t]estimony of a witness in a former trial is admissible in a second trial when, at the time the witness is deceased, under a disability, is permanently absent from the State or is unavailable by reason of his claim of privilege at the second trial." (citation omitted) Further, the question of whether the evidence is sufficient to authorize proof of the former testimony of an absent witness is for the trial court.Williams, supra; Hardaman v. State, 17 Ala. App. 49, 81 So. 449
(1919).
At trial arguments on the issue were heard by the court outside the presence of the jury. The state presented evidence that Officer Robbins had not been able to work since his heart attack in May and that he had been hospitalized from May 28 through June 15, 1982, as a result of that heart attack. Letters from Officer Robbins's physician stated that he was to be hospitalized again on August 9, 1982, the first day of appellant's trial.
The trial court reviewed the former testimony and observed that it was basically unobjected to by appellant's counsel, who represented appellant in both trials. The testimony concerned Officer Robbins's *Page 261 
findings at the scene of the crime and what he did with the evidence he found there.
We have searched the record with care and have found no prejudice to appellant in the admission of this testimony from his first trial. There is ample evidence from which the trial judge could have found that the witness was under a disability and his decision on this issue should not be disturbed on appeal.
Appellant next contends that the trial court erred in denying his motions in limine, asking that the court prohibit the State from calling John Mays, Sandra Triplett, and Ramsey Lane to testify at trial. This court recently held, however, that the denial of a motion in limine cannot, in and of itself, rise to the level of reversible error. Brooks v. State, 443 So.2d 1301
(Ala.Crim.App. 1983); Oliver v. State, 440 So.2d 1180
(Ala.Crim.App. 1983).
In the case at bar, appellant claims that John Mays's testimony was predictably vague, inconsistent and inadmissible. At trial, appellant was able to establish doubt regarding Mays's certainty of the date on which certain events occurred, but this doubt, as well as any vagueness or inconsistency in his testimony properly went to the credibility of the witness, and was duly submitted to the jury. Taylor v. State,408 So.2d 551, (Ala.Crim.App. 1981), cert. denied, 408 So.2d 555 (Ala. 1982); Wilcutt v. State, 284 Ala. 547, 226 So.2d 328 (1969).
The admissibility of Miss Triplett's testimony was confirmed in Neal, supra.
Ramsey Lane's complained of testimony concerned Miss Shehane's stated destination and purpose when she left him on the night of her robbery and murder. Appellant contends that the testimony should not have been admitted over his hearsay objection. It is clear, however, that all acts done and words spoken pending the commission of a particular act, tending to illustrate or give character to that act, are admissible into evidence as part of the res gestae of the act. Linville v.Crittenden, 272 Ala. 630, 133 So.2d 381 (1961); Roan v. State,225 Ala. 428, 143 So. 454 (1932); Ward v. Lane, 189 Ala. 340,66 So. 499 (1914). More specifically, in Thornton v. State,253 Ala. 444, 45 So.2d 298 (1950), the court held that statements made by a person since deceased, with regard to either the purpose or destination of a trip, no matter how short, was admissible as part of the res gestae of the act. "The resgestae alluded to here is not the res gestae of the main fact — the murder, but the res gestae of the act being performed or immediately contemplated by the declarant, the act of beginning or contemplating the trip or journey." Thornton,253 Ala. at 448, 45 So.2d at 301.
Appellant asserts that the trial court erred in denying his motion to ask additional voir dire questions concerning whether potential jurors had formed an opinion in the case. Appellant's request was properly denied, since as both he and the court thoroughly explored the issue on questioning of the venire and on individual questioning of potential jurors selected by the attorneys. Furthermore, a defendant has no absolute right to interrogate each prospective juror. A decision on this issue is within the sound discretion of the trial judge, whose ruling will not be disturbed on appeal absent an abuse of that discretion. Peterson v. State, 350 So.2d 771 (Ala.Crim.App. 1977); Clark v. State, 294 Ala. 493, 318 So.2d 822 (1975).
Appellant further objects to the court's striking of two potential jurors, one of whom testified that he was physically unable to attend for long periods of time, and one of whom testified that he would be unable to concentrate on evidence presented in the trial since he would be forced to leave his child at home unattended.
Section 12-16-63 (a), Code of Alabama (1982 Cum.Supp.), reads as follows:
 "Section 12-16-63. Excusing prospective jurors from service.
 "(a) The court, upon request of a prospective juror or on its own initiative, shall determine on the basis of information provided on the juror qualification *Page 262 
form or interview with the prospective juror or other competent evidence whether the prospective juror should be excused from jury service. The jury commission shall enter this determination form on the juror qualification form and the master list."
The testimony of the two potential jurors was properly accepted as proof of their disqualification. Parker v. State,7 Ala. 9, 60 So. 995 (1913). The trial court is vested with broad discretion in the excusal of prospective jurors. Crawford v.State, 377 So.2d 145 (Ala.Crim.App.), aff'd, 377 So.2d 159
(Ala. 1979), rev'd on other grounds, 405 So.2d 702 (Ala. 1981). The trial court's actions in this case were within its sound discretion and should not be disturbed on this appeal.
Finally, appellant contends that the trial court erred in denying twenty-seven separate charges proffered by the defense.
In Allen v. State, 414 So.2d 989 (Ala.Crim.App. 1981), aff'd,414 So.2d 993 (Ala. 1982), this court recognized that in order to preserve this issue for appellate review, the defendant must object and state his grounds before the jury retires. Furthermore, defendant must specifically except to each of the charges refused, Curtis v. State, 424 So.2d 679 (Ala.Crim.App. 1982), and the grounds assigned must be specific. Rowe v.State, 421 So.2d 1352 (Ala.Crim.App. 1982).
Defendant's objections were as follows:
 "MR. DINSMORE: Your Honor, the defendant would except to the court's charge that, as to the capital offense, it related to — it incorrectly related the law as we stated it.
 "The law as we understand it, it is my understanding of the law in order to be convicted of the capital offense in a capital case, the defendant must, however, be shown to be the trigger man or that when he was going out to commit the alleged act that death would be the probable and likely result.
 "THE COURT: Is that as from in the Enmund case out of Florida?
"MR. DINSMORE: Yes, sir.
 "THE COURT: I note your exception, and give you an exception."
Under Raines v. State, 429 So.2d 1111 (Ala. 1982), an accomplice to a robbery where the victim is intentionally killed may be convicted of a capital offense and sentenced to death if the state proves that the defendant was an accomplice to the intentional killing. It is not necessary that defendant have been the trigger man; thus, appellant's objection embraced an erroneous statement of the law.
 "MR. DINSMORE: Thank you, Judge. If I understood your robbery — the robbery-murder, that one under the capital offense could come before the other. We would submit to this Court that that is an incorrect proposition of the law under the capital offense as charged in the indictment, that robbery must occur first or if one — if Miss Quenette Shehane was murdered and subsequent to that time the T.V. set was taken, it would not be a capital offense.
 "THE COURT: Okay, I note your objection and give you an exception to each and every one."
Under Thomas v. State, 460 So.2d 207 (Ala.Crim.App. 1983), this is also an incorrect statement of the law.
 "What other than that does the defense say to the Court's charge?
 "Other than the exceptions as noted, what says the defense to the Court's charge?
 "MR. DINSMORE: We would except to your failure to give our remaining written charges, Your Honor.
"THE COURT: Okay.
 "MR. DINSMORE: We feel that they correctly state propositions of law not covered by the written charges — or excuse me, the oral charge of the Court.
 "THE COURT: Not covered by the other written requested charges?
"MR. DINSMORE: Yes, sir.
"THE COURT: All right, I note your exception.
"MR. DINSMORE: Thank you. *Page 263 
"THE COURT: All right, anything further?
"MR. DINSMORE: No, sir."
Under Curtis v. State, 424 So.2d 679 (Ala.Crim.App. 1982), and Allen v. State, 414 So.2d 989 (Ala.Crim.App. 1981), aff'd,414 So.2d 993 (Ala. 1982), defendant must specifically except to the trial judge to each of the charges so refused. The general objection of defendant in this case was not sufficient to preserve the issue for review. In any case, the charges in question were either incorrect propositions of law, or were substantially covered in the court's oral charge. Campbell v.State, 423 So.2d 284 (Ala.Crim.App. 1982).
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.